# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DERALD W. GEDDES; BLACK ROCK VENTURES, LLC; NATIONWIDE BANK; SUZANNE GRISMORE GEDDES; STATE OF UTAH, TAX COMMISSION; and WEBER COUNTY, UTAH,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 1:17-cv-00167-RJS-CMR<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Cecilia M. Romero |

The United States filed this action to reduce to judgment federal tax liabilities pro se Defendant Derald Geddes owes and to foreclose upon real property he owns in Weber County, Utah. Before the court is Geddes' Motion by Special Appearance to Dismiss for Insufficiency of Service and Immunity (Motion).[1] For the following reasons, the Motion is DENIED.

## BACKGROUND[2]

In 2007, Geddes was assessed for tax liabilities for tax years 2003–2005, except for one late filing penalty for the tax year 2004, which was assessed in 2017.[3] Between 2011 and 2013, Geddes was also assessed for tax liabilities for tax years 2007–2010.[4]

---

[1] Dkt. 27 (Motion to Dismiss).

[2] The following facts are drawn from the United States' Complaint (Dkt. 2), Status Reports (Dkts. 13, 24), and the Declaration from Ryan S. Watson, counsel for the United States (Dkt. 28-1).

[3] Dkt. 2 (Complaint) ¶ 11.

[4] *Id.* ¶ 25.

On October 26, 2017, the United States filed this action seeking to reduce to judgment $ 994,682.10 of unpaid federal income tax and civil penalty assessments, and to foreclose related federal tax liens.[5] The United States filed the action three days before the statute of limitations ran on Geddes' 2003 liabilities and eight months before the limitations period would run on his 2004–2005 liabilities.[6]

At the time of filing, the United States believed Geddes was residing in Chile based on statements his neighbor and son made to an IRS Officer.[7] After serving the other Defendants,[8] the United States informed the court that "upon belief," Geddes had not been served because he was not living in the United States.[9] After providing this status report, the United States hired a private investigator to locate Geddes in Chile so he could be served, but the investigator was unable to find Geddes.[10]

In February 2020, Geddes was arrested in Florida on related criminal charges and taken into federal custody.[11] Nearly one year later, on January 25, 2021, the IRS Office of Chief

---

[5] Dkt. 2 (Complaint) ¶¶ 1, 39, 49.

[6] The 2003 liabilities were assessed on March 19, 2007. Dkt. 2 (Complaint) ¶ 11. The United States had ten years from the date of assessment to initiate court proceedings under 26 U.S.C. § 6502(a)(1); however, that time was tolled for six months and forty days due to bankruptcy proceedings that were dismissed after thirty-nine days. *Id.* ¶¶ 12–14; 26 U.S.C. § 6502(a)(1) (ten years); 26 U.S.C. § 6503(b)s (six months plus time assets are in court custody); *In re Geddes*, No. 07-24220, at ECF 1, 28 (Bankr. D. Utah 2007) (forty days). Thus, the limitations period for the 2003 liabilities ran on October 29, 2017. Dkt. 2 (Complaint) ¶ 14. The 2004–2005 liabilities were assessed on November 19, 2007 and were subject to a limitations deadline of June 28, 2018. *See id.* ¶¶ 11, 14.

[7] Dkt. 13 (2018 Status Report) ¶ 3.

[8] The other Defendants are parties who may claim an interest in the real property at issue in this case and include: (1) Black Rock Ventures LLC, an entity used by Geddes to attempt to encumber the real property by identifying it as a beneficiary on a Deed of Trust recorded with the Weber County Recorder; (2) Nationwide Bank; (3) Suzanne Grismore Geddes, Geddes' spouse; (4) State of Utah, Tax Commission; and (5) Weber County, Utah. Dkt. 2 (Complaint) ¶¶ 6–10; Dkt. 12, *Def. Suzanne Grismore Geddes' Answer* ¶ 4.

[9] *Id.* at 2.

[10] Dkt. 24 (2021 Status Report) ¶ 4.

[11] On December 2, 2015, Geddes was indicted for multiple violations of federal tax law. *See United States v. Geddes*, No. 1:15-cr-93-TC, ECF No. 1 (D. Utah Dec. 2, 2015). The IRS later referred the related civil matter to the United States Department of Justice, Tax Division, Civil Trial Section. Dkt. 28-1, *Declaration of Ryan S. Watson, Attorney for the United States* (Watson Declaration) ¶ 2. On February 26, 2020, Geddes was arrested in the

Counsel informed counsel for the United States in this matter that Geddes was being held in the Weber County Jail awaiting trial on the criminal charges.[12] One week later, on February 3, 2021, the United States served Geddes with the Summons and Complaint in this matter.[13] On March 3, 2021, Geddes filed a Motion to Dismiss.[14]

## ANALYSIS[15]

Geddes moves to dismiss this action for lack of subject matter jurisdiction, lack of personal jurisdiction, immunity, and insufficient service of process.[16] The court addresses Geddes' arguments in that order.

### A. Subject Matter Jurisdiction

Geddes moves to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).[17] While Geddes makes no explicit argument supporting his grounds for moving under Rule 12(b)(1), he does cite to Article III, § 2 of the Constitution, which articulates the limits of federal judicial power.[18] Even construing Geddes' pro se Motion

---

Southern District of Florida for charges in the related criminal case. *See Geddes*, No. 1:15-cr-93-TC, ECF 12 (D. Utah Mar. 11, 2020) (arrest warrant returned executed).

[12] Dkt. 28-1 (Watson Declaration) ¶ 5. The court ordered a status report in this case on January 28, 2021. Dkt. 23 (Order).

[13] Dkt. 25.

[14] Dkt. 27 (Motion).

[15] Geddes is a pro se litigant. Pro se litigants are held to less stringent standards than parties formally represented by lawyers (*see, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam)) and their filings are "to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A litigant's pro se status, however, "does not excuse the obligation . . . to comply with the fundamental requirements of the Federal Rules of Civil . . . Procedure." *Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994). Further, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[16] Dkt. 27 (Motion) at 1.

[17] *Id.*

[18] *Id.*

liberally,[19] his Rule 12(b)(1) challenge fails. The United States has identified at least three separate grants of jurisdiction applicable to this case: 28 U.S.C. §§ 1340, 1345, and 26 U.S.C §§ 7402.[20] Section 1340 grants original jurisdiction over suits arising under federal internal revenue law, and this suit was brought under § 7403 of the Internal Revenue Code. Section 1345 grants original jurisdiction over suits commenced by the United States, like this one. Finally, § 7402 grants jurisdiction to award relief appropriate for the enforcement of internal revenue law. Here, the United States seeks to recover federal tax liabilities pursuant to internal revenue law.[21] Further, the Tenth Circuit has confirmed the applicability of these statutes to similar cases.[22]

Geddes also claims immunity from suit under the Foreign Sovereign Immunities Act (FSIA),[23] which may be construed as an argument against the court's subject matter jurisdiction.[24] This argument fails because Geddes is not a foreign state or sovereign and has not shown how he can qualify for immunity under the Act.[25]

For these reasons, Geddes' Rule 12(b)(1) challenge to this court's subject matter jurisdiction is denied.

---

[19] Geddes cites Article III in his section on immunity. Dkt. 27 (Motion) at 1. To liberally construe Geddes' filing, the court considers this as an argument for lack of subject matter jurisdiction.

[20] Dkt. 2 (Complaint) ¶ 3.

[21] *Id.* ¶¶ 38–39, 48–51.

[22] *See United States v. Dawes*, 161 F. App'x 742, 745 (10th Cir. 2005) (unpublished); *United States v. Novotny*, 71 F. App'x 792, 795 (10th Cir. 2003) (unpublished).

[23] 28 U.S.C. §§ 1602 *et seq.*

[24] Dkt. 27 (Motion) at 1.

[25] The Foreign Sovereign Immunities Act "is the exclusive source of jurisdiction for claims against foreign states or their instrumentalities in the courts of this country." *Southway v. Central Bank of Nigeria*, 328 F.3d 1267, 1271 (10th Cir. 2003). Among other things, the defendant must first establish a prima facie case that it is a sovereign state. *Orient Mineral Co. v. Bank of China*, 506 F.3d 980, 991 (10th Cir. 2007).

### B. Personal Jurisdiction

Geddes moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2) but provides no support for his argument.[26] Under Local Rule 7-1(a)(1), motions must assert the "relevant facts, supporting authority, and argument."[27] While Geddes's *pro se* Motion is liberally construed, his status does not relieve him from compliance with the Local Rules,[28] and the court cannot advance arguments for him. Therefore, Geddes's Rule 12(b)(2) personal jurisdiction argument fails.[29]

### C. Immunity

Geddes claims immunity from suit under the Foreign Sovereign Immunities Act and the Constitution, specifically Article III, § 2, and the Ninth and Tenth Amendments. Geddes provides no argument or support for these contentions, as required by Local Rule 7-1(a)(1). Moreover, none of these authorities provide a source of immunity to defendants like Geddes. Accordingly, the court denies Geddes' Motion based on his immunity arguments.

### D. Insufficient Service of Process

Geddes also moves to dismiss for insufficient service of process under Rule 12(b)(5).[30] Rule 4(m) presumptively requires service within ninety days of filing the Complaint. If a plaintiff shows good cause for failing to effectuate service within ninety days, the court must order an extension of time.[31] If there is no good cause, the court has discretion to award a

---

[26] Dkt. 27 (Motion) at 1.

[27] DUCivR 7-1(a)(1).

[28] DUCivR 83-1.7.

[29] And this is not a case where the court has independent concerns about exercising personal jurisdiction over Geddes. Geddes resided in Utah, was eventually served here, and the United States alleges it is where the tax liabilities at the center of the case arose in the first instance.

[30] Dkt. 27 (Motion) at 1.

[31] Fed. R. Civ. P. 4(m).

permissive extension.³² "In opposing a motion to dismiss for insufficient service of process, plaintiff bears the burden to make a prima facie case that he has satisfied statutory and due process requirements[.]"³³

In its Opposition Memorandum, the United States makes three arguments: (1) service was properly effected because Rule 4(m)'s ninety-day service period does not apply to service in foreign countries, and the United States acted reasonably by promptly effecting service once it was possible; (2) it had good cause for failing to timely serve Geddes because he was living in Chile when the Complaint was filed, the United States made diligent efforts to locate him and served him immediately upon learning of his whereabouts, and Geddes suffered no prejudice from the delay; and (3) even if it did not have good cause, it requests a permissive extension.³⁴

Under the plain language of Rule 4(m), the ninety-day service period does not apply to service in a foreign country.³⁵ And the court agrees with the United States that Rule 4(m) "does not contemplate a time-to-serve rule where the defendant resides in a foreign country when the complaint is filed but returns to the United States at a later date."³⁶ Further, the court is not aware of any authority establishing such a rule.³⁷ But the United States has not shown that

---

³² *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995).

³³ *Marion v. Weber Cty.*, No. 1:18-cv-00148, 2019 WL 5550015, at *1 (D. Utah Oct. 28, 2019).

³⁴ Dkt. 28 (Opposition) at 3–4.

³⁵ Fed. R. Civ. P. 4(m).

³⁶ Dkt. 28 (Opposition) at 3.

³⁷ Circuits are split, however, on the question of when foreign service must be made in a foreign country, and the Tenth Circuit has not addressed the issue. *Compare Lucas v. Natoli*, 936 F.2d 432 (9th Cir. 1991) (per curiam) (unlimited time period) *with Monalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985) (more time if plaintiff attempts to serve), *and Nylok Corp. v. Fastener World Inc.*, 396 F.3d 805, 807 (7th Cir. 2005) (trial courts have discretion to impose a time limit) *and Lozano v. Bosdet*, 693 F.3d 485, 488–89 (5th Cir. 2012) (plaintiff must exercise due diligence). Only a few district courts within the circuit have addressed this question. *See Two Moms and a Toy, LLC v. Int'l Playthings, LLC*, No. 10-cv-02271-PAB-BNB, 2012 WL 5353572 (D. Colo. Oct. 29, 2012) (not unlimited time); *Briseno v. Mktg. & Mgmt. Sols., LLC,* No. 18-02482CM-JPO, 2020 WL 618577 (D. Kan. Feb. 10, 2020) (same); *Navarro v. Tufesa USA LLC*, No. 2:17-cv-00044-JNP-PMW, 2019 WL 763798, at *2 (D. Utah Feb. 21, 2019) (indicating that test may depend on whether dismissal would destroy diversity). Still, the court finds the foreign-service exception of Rule 4(f) does not apply in this case since no service was made in a foreign country.

Geddes was, in fact, residing in Chile when the United States filed this action. It apparently *believed* he was and hired an investigator to find him. But that fact has not been established in the papers before the court, and the United States has not argued that the court can excuse it from timely service based on a possibly incorrect belief that Geddes was residing in a foreign country. Thus, the court will assume that the United States failed to timely effect service under Rule 4(m). For the reasons explained below, the court nevertheless finds that good cause exists to excuse this failure.

"In determining whether to order service be made within a specified time, the court conducts a two-part inquiry."[38] First, the court must determine whether the United States "has shown good cause for the failure to timely effect service."[39] Second, the court must consider "whether a permissive extension of time may be warranted."[40] The court may grant a permissive extension even when there is no good cause for failure to timely serve.[41]

"The 'good cause' provision . . . should be read narrowly to protect only those plaintiffs who have been meticulous in their efforts to comply with the Rule."[42] For example, a plaintiff's unawareness of the time-to-serve rule[43] and the lack of any prejudice to the defendant[44] are not grounds for "good cause." Here, Geddes was believed to be living in Chile when the Complaint was filed against him in 2017,[45] based on information reported by a neighbor and Geddes' own

---

[38] *Marion*, 2019 WL 5550015, at *2.

[39] *Espinoza*, 52 F.3d at 841.

[40] *Id.*

[41] *Id.*

[42] *Despain v. Salt Lake Area Metro Gang Unit*, 13 F.3d 1436, 1439 (10th Cir. 1994) (internal quotation omitted).

[43] *Marion*, 2019 WL 5550015, at *1.

[44] *Despain*, 13 F.3d at 1439.

[45] Dkt. 13 (2018 Status Report) ¶ 3.

7

son. The United States made diligent attempts at that time to locate him by hiring a private investigator.[46] Despite these efforts, Geddes could not be found.[47] Because the United States had a seemingly reasonable belief that Geddes had fled the country and tried to find him where they believed he had gone, the United States demonstrates good cause for not serving Geddes while he was in Chile.

But even if the court did not find the United States demonstrated good cause, it concludes the United States' request for a permissive extension should be granted.[48] The court has discretion whether to grant this extension, and the Tenth Circuit has directed district courts to consider, among other things, whether "the applicable statute of limitations would bar the refiled action."[49] Here, the limitations period has run for the liabilities assessed in 2007 for the 2003–2005 tax years, except for the late filing penalty that was assessed in 2017.[50] Where dismissal of the United States' Complaint would bar its claims related to the 2003–2005 tax years, this factor weighs in favor of permissive extension.[51] Accordingly, the court finds the United States' request should be granted.

---

[46] Dkt. 24 (2021 Status Report) ¶ 4.

[47] *Id.*

[48] Dkt. 28 (Opposition) at 3.

[49] *Espinoza*, 52 F.3d at 841–42.

[50] The limitations period ran for the 2003 liabilities on October 29, 2017. The 2004–2005 liabilities were assessed on November 19, 2007 and were subject to a limitations deadline of June 28, 2018. Dkt. 2 (Complaint) ¶ 11; 26 U.S.C. § 6502(a)(1) (ten years); 26 U.S.C. § 6503(b) (six months); *In re Geddes*, Bankr. D. Utah No. 07-24220, at Dkts. 1, 28 (forty days).

[51] While the *Espinoza* factor asks whether the statute of limitations would bar a refiled action, the Tenth Circuit, in an unpublished opinion, remanded a case for the district court to consider whether a plaintiff's individual claim would be barred if she had to refile. *See Dahn v. U.S.*, 77 F.3d 492, at *2 (10th Cir. 1996) (unpublished table decision).

## CONCLUSION

For the reasons stated, Geddes' Motion is DENIED. The United States is entitled to an extension of time and is ordered to properly effect service upon Geddes no later than thirty (30) days from the date of this Order.

SO ORDERED this 25th day of June 2021.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge